**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| GLENN ARTHUR SINCLAIR and MARILYN SINCLAIR, ) ) ) Plaintiffs, ) ) v. ) ) HEMBREE & HODGSON ) CONSTRUCTION, L.L.C., ) JUBIL LEE McBLAIR, ) JSW PROPERTIES, INC., and ) CONTINENTAL TIRE NORTH ) AMERICA, INC. ) ) Defendants. ) | Case No. CIV-18-938-D |

**ORDER**

Before the Court is a Motion for Partial Summary Judgment filed by Defendant Hembree & Hodgson Construction, LLC ("H&H") [Doc. No. 83]. Plaintiffs responded in opposition [Doc. No. 113], and H&H replied [Doc. No. 131]. The matter is fully briefed and at issue.

**BACKGROUND**

This action arises out of injuries sustained by Plaintiff Glenn Sinclair in a rollover vehicle accident on October 2, 2017, around 5:41 p.m. Mr. Sinclair and Defendant Jubil Lee McBlair ("McBlair") were involved in a head-on collision on County Road 170 near Marland, Oklahoma, in Noble County. Mr. Sinclair was driving southbound in a 2017 Dodge Ram 2500. McBlair was driving northbound in a 2001 Ford F-350. McBlair, who was employed by H&H and was driving while impaired, lost control of his pickup truck

when the front driver's side tire blew out. The tire, which was 17 years old, was mounted on the truck by JSW Properties, Inc., d/b/a Take Ten Tire & Lube ("Take Ten"), and was manufactured and sold by Continental Tire North America, Inc. McBlair's vehicle crossed the center line and collided with Mr. Sinclair's vehicle.

The vehicle McBlair was driving at the time of the accident was owned by H&H. H&H admits that McBlair was acting within the course and scope of his employment with H&H at the time of the accident. H&H seeks summary judgment as to Mr. Sinclair's negligent hiring, training, supervision, and entrustment claims and his request for punitive damages.

## STANDARD OF DECISION

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Hiatt v. Colo. Seminary*, 858 F.3d 1307, 1315 (10th Cir. 2017) (quoting FED. R. CIV. P. 56(a)). A dispute is genuine "if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way," and it is material "if under the substantive law it is essential to the proper disposition of the claim." *Becker v. Bateman*, 709 F.3d 1019, 1022 (10th Cir. 2013) (internal quotation marks omitted). At the summary judgment stage, the Court views the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Williams v. FedEx Corp. Services*, 849 F.3d 889, 896 (10th Cir. 2017).

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact and entitlement to judgment as a matter of law."

*Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670–71 (10th Cir. 1998) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  If the movant meets that burden, the nonmovant must "go beyond the pleadings and 'set forth specific facts' that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."  *Adler*, 144 F.3d at 671; *see also* FED. R. CIV. P. 56(c)(1)(A). To accomplish this, the nonmovant must identify facts by reference to the pleadings, depositions, other discovery materials, exhibits, or affidavits.  *See Id.*  The Court is not limited to the cited materials, but rather may consider other materials in the record.  FED. R. CIV. P. 56(c)(3).  The Court's inquiry is whether the facts and evidence of record present "a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  Unsupported conclusory allegations are not sufficient to defeat summary judgment.  *Matthiesen v. Banc One Mortg. Corp.*, 173 F.3d 1242, 1247 (10th Cir. 1999).

## DISCUSSION

**Statement of Facts**[1]

Mr. Sinclair alleges that H&H is responsible for the actions and conduct of McBlair under the doctrine of *respondeat superior*.  H&H admits that McBlair was acting within the course and scope of his employment at the time of the accident.

---

[1] This statement includes material facts presented by both parties that are supported as required by FED. R. CIV. P. 56(c)(1).  If a party has asserted a fact, or asserted that a fact is disputed, but has failed to provide necessary support, the assertion is disregarded.  All facts are stated in the light most favorable to Plaintiffs.

McBlair's driver's license was suspended in 2008. It was suspended a second time in 2012 or 2013, but was reinstated four years before the accident. John Hodgson, co-owner of H&H, hired McBlair in 2014, after the company conducted a background check. Mr. Hodgson stated that the company's background check consisted of checking court records and calling the applicant's references. Mr. Hodgson testified in his deposition that what mattered was that McBlair had a valid driver's license when he was hired. He was not aware that McBlair's driver's license had been revoked twice or that McBlair had been arrested at least ten times prior to his employment with H&H.[2] Mr. Hodgson was only aware of McBlair's driving under the influence arrest in 2008.

Four months before the accident, H&H gave McBlair the 2001 Ford F-350 to drive. Jason Johnson ("Johnson"), McBlair's site foreman, "assumed everyone [at H&H] knew" of McBlair's drinking on the job.[3] Johnson's Dep. Tr. at 19 [Doc. No. 113-4 at 2]. Johnson testified in his deposition that he would sometimes "take a shot just to appease" McBlair. *Id*. Both McBlair and Johnson testified that McBlair had consumed alcohol on October 2, 2017, while he was still at the job site. Because McBlair had been drinking and Allen Harmon ("Harmon")—another H&H employee had not—Johnson "assumed" Harmon would drive the truck back to the office. Johnson's Dep. Tr. at 4 [Doc. No. 83-3 at 2]. However, McBlair drove, and Harmon rode in the passenger seat.

---

[2] Most of McBlair's arrests were for alcohol or drug offenses.

[3] Johnson worried that after McBlair was given the truck to drive that he would continue drinking on the job. He believed that McBlair's drinking was obvious to others at H&H.

4

According to Harmon, there was nothing out of the ordinary with the vehicle or the tires in the twenty minutes preceding the crash. Harmon's first indication that something was wrong was "the pop of the tire," and "within just split seconds," the truck collided with the other truck. Harmon's Dep. Tr. at 17 [Doc. No. 83-4 at 3]. Plaintiffs assert that the first indication that something was wrong should have been when McBlair operated the vehicle while impaired.

Oklahoma Highway Patrol Trooper Tyler Langston investigated the accident. He testified that the cause of the accident was the blown tire, but that McBlair's impairment could have slowed his reaction time. H&H's expert witness on accident investigation and reconstruction, Cline Young, Ph.D., P.E., has opined that if the tire marks were measured correctly and represent the entirety of the deceleration distance from blowout to impact, then the "accident was going to happen anyway due to the defective nature of the left front tire." Young's Report [Doc. No. 83-6 at 3].

**Analysis**

I.  **Because H&H concedes that McBlair was acting within the scope of his employment at the time of the accident, Mr. Sinclair's hiring, training, and supervision claims against H&H are superfluous.**

Citing *Jordan v. Cates*, 935 P.2d 289, 294 (Okla. 1997), H&H seeks summary judgment on Mr. Sinclair's claims that H&H was negligent with regard to hiring, training, and supervising McBlair. Because H&H concedes that McBlair was acting within the scope of his employment at the time of the accident, H&H asserts that these direct liability claims are superfluous.

In *Jordan*, a store visitor was involved in an altercation with an employee of the store. *Id*. at 291. The visitor alleged that during the altercation the employee assaulted and battered him. *Id*. He sought to recover against the store for its vicarious liability under the theory of *respondeat superior*. *Id*. Additionally, he brought a separate claim directly against the store for negligent hiring and retention of the employee. *Id*.

Recognizing the required elements to confer *respondeat superior* liability, the employer stipulated that the altercation occurred while its employee was acting within the scope of his employment and that it would be liable for any damages awarded by the jury. *Id*. at 292. In light of this admission, the trial court granted summary judgment to the employer on the negligent hiring and retention claims. *Id*. The Oklahoma Supreme Court upheld the grant of summary judgment, concluding that:

> [T]he theory of negligent hiring and retention is available in a nonvicarious liability case or in a case where vicarious liability has not been established. In the case at bar, vicarious liability has been established through stipulation . . . . Our holding today is limited to those situations where the employer stipulates that liability, if any, would be under the *respondeat superior* doctrine, thereby making any other theory for imposing liability on the employer unnecessary and superfluous. Because vicarious liability can include liability for punitive damages, the theory of negligent hiring and retention imposes no further liability on employer.

*Id*. at 293.

Two years later, the Oklahoma Supreme Court reiterated this limitation on employer liability: although "[e]mployers may be held liable for negligence in hiring, supervising or retaining an employee[,] . . . th[is] theory of recovery is available if vicarious liability is not established." *N.H. v. Presbyterian Church (U.S.A.),* 998 P.2d 592, 600 (Okla. 1999).

Thus, H&H is correct that separate negligent hiring, training, and supervision claims are superfluous in a case where vicarious liability has been established through stipulation. Accordingly, H&H's motion for summary judgment is granted as to Mr. Sinclair's negligent hiring, training, and supervision claims, in light of its concession that McBlair was acting within the scope of his employment.[4]

## II. Whether H&H negligently entrusted McBlair with its company vehicle is a question of fact for the jury to determine.

H&H contends that summary judgment is appropriate on Mr. Sinclair's negligent entrustment claim because Mr. Sinclair lacks evidence to support such a claim. Liability for negligent entrustment of a vehicle may be imposed only when the following elements are established: (1) a person who owns or has possession and control of an automobile allowed another driver to operate the automobile; (2) the person knew or reasonably should

---

[4] In *Fox v. Mize*, 428 P.3d 314, 321–22 (Okla. 2018), the Oklahoma Supreme Court concluded that negligent entrustment cases are separate and distinct from *respondeat superior* negligence liability. Thus, an "employer's stipulation that an accident occurred during the course and scope of employment does not, as a matter of law, bar a negligent entrustment claim." *Id.* at 322. The court in *Fox* did not decide whether a negligent hiring claim should be treated differently than a negligent entrustment claim because that issue was not before it. *Id.* Further, *Jordan v. Cates* has not been overruled and remains good law, and the Court must follow it. *See, e.g., Annese v. U.S. Xpress, Inc.,* No. CIV-17-655-C, 2019 WL 1246207, at *3 (W.D. Okla. Mar. 18, 2019) (dismissing the plaintiff's negligent hiring claim because *Jordan* has not been overruled); *Thurmond v. CRST Expedited, Inc.*, No. CIV-18-1142-R, 2019 WL 6311996, at *1 (W.D. Okla. Nov. 25, 2019) (maintaining the prior status of the law that a negligent hiring claim is superfluous where an employer stipulates that its employee was acting within the scope of employment at the time of the accident).

have known that the other driver was careless, reckless, and incompetent; and (3) an injury was caused by the careless and reckless driving of the automobile. *Green v. Harris*, 70 P.3d 866, 871 (Okla. 2003).

The parties do not dispute the first element. McBlair was given the 2001 Ford F-350 to drive by H&H four months before the accident. Although Johnson said he assumed Harmon would drive the truck back to the office since McBlair had been drinking and Harmon had not, there is no evidence to support Johnson's assumption. Johnson did not tell McBlair not to drive the company truck that day. Johnson likewise drove his truck after consuming alcohol that day.[5]

The Oklahoma Supreme Court "has long held that intoxication and the 'propensity for becoming intoxicated' can result in liability for the supplier of the automobile if the supplier knows or has reason to know of such intoxication or propensity for becoming intoxicated." *Sheffer v. Carolina Forge Co., L.L.C.,* 306 P.3d 544, 548 (Okla. 2013) (quoting *Nat'l Trailer Convoy, Inc. v. Saul*, 375 P.2d 922, 929 (Okla. 1962)). Prior to entrusting McBlair with the truck, Mr. Hodgson was aware of McBlair's driving under the influence arrest in 2008. Johnson, as site foreman, was aware of McBlair's drinking on the job, and he sometimes consumed alcohol with McBlair on the job. They consumed alcohol on the job site the day of the accident. Concerning which people at H&H knew of McBlair's drinking, Johnson stated the following:

> Q:   Did you ever worry that when he was given a truck he was going to keep drinking like he was?

---

[5] It is unclear from the record whether Johnson drove his personal vehicle or a company vehicle on October 2, 2017.

> A:   Yes, I did.
>
> Q:   Did you ever tell anybody that?
>
> A:   Sure I'm not the only one, but people know.
>
> Q:   When you say "people," who do you think knew?
>
> A:   Everyone.
>
> Q:   Everyone at [H&H] knew he had a problem?
>
> A:   Well, maybe I assumed everyone knew.
>
> Q:   Was it pretty obvious?
>
> A:   I think so. But a lot of people in construction do have problems.

Johnson's Dep. Tr. at 19 [Doc. No. 113-44 at 2]. "The question of negligent entrustment is one of fact for the jury, and may be proven by circumstantial as well as positive or direct evidence." *Green*, 70 P.3d at 871. The Court finds that the evidence is sufficient to raise a genuine dispute as to whether H&H knew or should have known of McBlair's propensity for becoming intoxicated.

H&H asserts that the blown tire was the proximate cause of Mr. Sinclair's injuries and not McBlair's driving while impaired. H&H points to its expert's opinion to support its argument. Specifically, Mr. Young opined that if the tire marks were measured correctly and represent the entirety of the deceleration distance from blowout to impact, then the "accident was going to happen anyway due to the defective nature of the left front tire." Young's Report [Doc. No. 83-6 at 3]. Although Mr. Sinclair does not dispute that this is

Mr. Young's opinion, Mr. Sinclair points to Trooper Langston's testimony that McBlair's impairment could have slowed his reaction to the blown tire.

"Not every intervening cause will insulate the original negligent actor from liability." *Minor v. Zidell Trust*, 618 P.2d 392, 394 (Okla. 1980). The Oklahoma Supreme Court has concluded that a "true supervening cause that cuts off possible liability for the original negligence" is a cause that meets these three requirements: (1) it is independent of the original act; (2) it is adequate on its own to bring about the result; and (3) it was not reasonably foreseeable. *Id*. The Court finds that proximate cause is an issue for the jury, and the jury can be instructed on direct, concurrent, and intervening causes. *Clark v. Turner*, 99 P.3d 736, 744 (Okla. Civ. App. 2004).

It is disputed whether the blown tire on its own caused the accident or whether McBlair's slowed reaction time from drinking while impaired contributed to the accident. There is also evidence of record that the tire blow-out was foreseeable. The parties do not dispute that the tire was 17 years old, and that it was mounted on the front driver's side of the truck about three months before the accident.

On the record presented, disputed facts and conflicting inferences from disputed facts could lead a reasonable person to conclude that H&H knew or had reason to know that McBlair was likely to drive the vehicle while impaired and create an unreasonable risk of harm to others when the accident occurred. Accordingly, H&H's motion for summary judgment is denied as to Mr. Sinclair's negligent entrustment claim.

### III.   Mr. Sinclair's request for punitive damages is an issue for the jury.

Under Oklahoma law, punitive damages are a question for the jury and are only available in actions involving fraud, oppression, malice, or gross negligence. *Fuller v. Neundorf*, 278 P.2d 836, 839 (Okla. 1954); *see also Fox v. Oklahoma Mem'l Hosp.*, 774 P.2d 459, 462 (Okla. 1989) (concluding that issues of negligence and the degrees thereof are questions for the trier of fact). Although gross negligence is defined in the Oklahoma Statutes as "the want of slight care and diligence," the Oklahoma Supreme Court has not adopted this definition as the kind of gross negligence that would support punitive damages. *See* OKLA. STAT. tit. 25, § 6; *see also White v. B.K. Trucking Co., Inc.*, 405 F. Supp. 1068, 1070 (W.D. Okla. 1975).

Instead, the Oklahoma Supreme Court refers to gross negligence as a reckless disregard for the rights of others or the equivalent of evil intent. *B.K. Trucking Co., Inc.*, 405 F. Supp. at 1070; *see also Fuller*, 278 P.2d at 839. "Punitive damages are allowable when there is evidence of reckless and wanton disregard of another's rights from which malice and evil intent may be inferred." *Graham v. Keuchel*, 847 P.2d 342, 363–64 (Okla. 1993) (indicating that evil intent may be inferred from a complete indifference to the consequences, reckless disregard of the safety of others, or gross negligence). The Court finds that a reasonable person could conclude from the evidence of record that H&H was indifferent to the consequences of its actions or demonstrated reckless disregard of another's rights.

Mr. Hodgson was aware of McBlair's driving under the influence arrest in 2008. Johnson, who expressed concerns about McBlair's drinking, sometimes consumed alcohol

with McBlair on the job. They consumed alcohol on the job site the day of the accident. Further, Johnson believed that McBlair's drinking was obvious to others at H&H, and assumed everyone at H&H knew of McBlair's drinking problem.

Although Johnson said he assumed Harmon would drive the truck back to the office since McBlair had been drinking and Harmon had not, there is no evidence to support Johnson's assumption. Johnson did not tell McBlair not to drive, and Johnson, himself, drove his truck after consuming alcohol that day. Finally, it is undisputed that the blown tire was 17 years old and was mounted on the front driver's side of the truck about three months before the accident. Thus, there are facts that support an inference that H&H was indifferent to the consequences of its actions or demonstrated reckless disregard by entrusting McBlair with the company vehicle. Thus, punitive damages are a question for the jury.

## CONCLUSION

Based on the foregoing, the Court finds that there are genuine disputes of material fact that preclude summary judgment on Mr. Sinclair's negligent entrustment claim and his request for punitive damages. The Court, however, grants summary judgment to H&H on Mr. Sinclair's negligent hiring, training, and supervision claims. Accordingly, H&H's Motion for Partial Summary Judgment [Doc. No. 83] is **GRANTED** in part and **DENIED** in part, as set forth herein.

**IT IS SO ORDERED** this 13th day of July 2020.

_____
TIMOTHY D. DeGIUSTI
Chief United States District Judge